IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEGAL EAGLE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:24-cv-03316 (CRC)<br>)<br>)<br>)<br>)<br>)<br>) |

**THIRD DECLARATION OF VANESSA R. BRINKMANN**

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1. I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (DOJ or the Department). In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP. The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from six senior leadership offices of the DOJ, specifically the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (OPA), as well as the Office of the Executive Secretariat (OES). Additionally, the IR Staff is responsible for processing FOIA requests seeking records from within the Special Counsel's Office (SCO).

2. I make the statements herein on the basis of personal knowledge, including my extensive experience with the FOIA, with OIP, and in handling FOIA requests for senior leadership office records, as well as information acquired by me in the course of performing my

1

official duties, including information provided to me by SCO's Records Manager and staff within the Justice Management Division (JMD) who have direct knowledge of the SCO's records.

3.  This declaration supplements and incorporates by reference the information previously provided in my first and second declarations in this case. *See* ECF No. 9-2, Declaration of Vanessa R. Brinkmann; *see* ECF No. 17-2, Second Declaration of Vanessa R. Brinkmann ("Second Brinkmann Declaration"). The purpose of this declaration is to address the scope of Plaintiff's narrowing proposal for its FOIA request to OIP for SCO records as described in Plaintiff's Opposition to Defendant's Motion to Dismiss in Part or, Alternatively, Motion for Summary Judgement in Part ("Plaintiff's Opposition"), and to further explain the basis for OIP's determination that Plaintiff's FOIA request, even with the proposed narrowing, fails to reasonably describe the records sought and would be unduly burdensome to process.

**Plaintiff's Narrowing Proposals**

4.  As explained in my second declaration, on January 10, 2025, Plaintiff sought an agreement to narrow the scope of Part (1) of its FOIA request for non-email materials from the Office of Special Counsel Jack Smith (SCO or SCO Smith), to which OIP responded with a counterproposal on April 29, 2025. *See* 2d Brinkmann Decl. ¶¶ 13, 15.

5.  Plaintiff proposed to narrow the scope of Part (1) of its FOIA request to eleven categories of records as follows:

>   1. Unredacted volumes of the final report;
>   2. All records explicitly cited in the final report;
>   3. All records exchanged between the SCO and any Congressional office;
>   4. All records exchanged between the SCO and the National Archives and Records Administration;
>   5. All records exchanged between the SCO and the White House;
>   6. All records exchanged between the SCO and the office of Special Counsel Robert Hur;

2

   7. All records exchanged between the SCO and DOJ personnel involved in the investigation regarding former Vice-President Mike Pence's retention of classified records;
   8. All records exchanged between the SCO and Special Master Raymond Dearie;
   9. All records provided to a federal court; and
   10. All deposition transcripts and recordings; and
   11. All witness statements.

  6.  Regarding Part (2) of Plaintiff's FOIA request for email materials from SCO personnel, Plaintiff seeks in its opposition to unilaterally narrow Part (2) of its request to the same eleven categories that Plaintiff formulated for non-email materials. *See* Pl.'s Opp. at 1 n.2.

  7.  For the reasons discussed below, neither Plaintiff's proposed narrowing for non-email materials nor its proposed narrowing for email materials cures either part of its request of being overly broad. Plaintiff's FOIA request thus is still not reasonably described, and it remains not reasonably possible for OIP to process Plaintiff's FOIA request.

### Data Volume Estimates for SCO Smith Records

  8.  In my second declaration, I described the organization and volume of the SCO records. *See* 2d Brinkmann Decl. ¶¶ 19-24. Those records were summarized as including at least twenty-two million digital data files, over 1.7 million email units, and hundreds of thousands of pages of paper records. *Id.* ¶ 24.

  9.  OIP can only rely on approximate calculations to estimate the total number of pages contained in a given data set in the SCO collection. Determining an approximate number of pages is not precise and is largely dependent on the file types that make up each dataset. For example, a Portable Document Format ("PDF") file generally will take up more electronic space than a Microsoft Word document. And certain subfolders may contain larger files comprised of images, audio, or video. Without expending the significant time and resources necessary to process the data and convert each file type to a format in which pages can be precisely counted,

OIP can only rely on rough approximations to estimate the total pages contained in the SCO collection.

10. In responding to Plaintiff's narrowing proposals below, OIP used a data conversion methodology to estimate roughly how each file type in the SCO Smith records collection may be understood in more tangible terms—i.e., an estimated number of pages. OIP conservatively estimates that one Terabyte ("TB") of data represents approximately seventy-five million pages, one Gigabyte ("GB") of data represents 75,000 pages, and one Megabyte ("MB") of data represents seventy-five pages.

11. Additionally, OIP has the ability to search the metadata of non-email digital data files for terms contained within the naming convention of a given filename. These metadata searches are used to estimate the volume of files that may be potentially responsive to Part (1) of Plaintiff's request.

12. For email materials, OIP has full search capabilities. However, because OIP cannot possibly review all potentially responsive search hits for responsiveness due to sheer volume, OIP has used initial searches to generate an estimated number of potentially responsive files.

13. For these metadata searches of non-email digital data files and email searches, OIP has used an estimate of three pages per file to provide an estimated page count for each category of materials discussed in further detail below. OIP views this metric as underinclusive, providing the Court with a low-end approximation regarding numbers of pages, given that numerous categories of records likely contain many files that exceed this figure.

### Plaintiff's Narrowing Proposal for Non-Email Records

14. Consistent with the above, OIP has conducted initial searches to provide an

estimated number of pages associated with each of Plaintiff's eleven narrowing categories. Where OIP conducted a metadata search, OIP has multiplied the number of files identified by three pages to arrive at a possible number of pages. Where OIP has a raw data figure, OIP has multiplied, for example, one GB of raw data by 75,000 pages to arrive at a rough estimation regarding the number of pages in a given data set.

15. The narrowing proposal for the first category of Part (1) of the Plaintiff's request sought unredacted volumes of the final SCO report. On April 29, 2025, in its counterproposal, OIP directed Plaintiff to the publicly available and unredacted copy of Volume I of the final report available online. Regarding Volume II of the final report, OIP explained in its counterproposal that Volume II of the final report is not releasable at this time under the injunction issued by Judge Aileen Cannon. *See United States v. Nauta*, 764 F. Supp. 3d 1216, 1225 (S.D. Fla. 2025).

16. The narrowing proposal for the second category of Plaintiff's request for non-email records seeks all records explicitly cited in the final report. Volume I of the final SCO report includes 285 footnotes often citing to multiple source materials, as well as many in-line citations. OIP estimates that the footnotes alone represent more than sixteen GB of data in the form of PDF or text files. While OIP cannot provide an exact number of pages, if OIP were to quantify this volume of data by a number of pages, OIP roughly estimates that sixteen GB could represent more than 1.2 million pages. The Volume II footnotes represent more than fourteen GB of data in the form of PDF or text files. OIP conservatively estimates that this volume of data represents more than one million pages. Accordingly, this category of Plaintiff's narrowing proposal may require OIP to individually review for responsiveness roughly 2.2 million pages of records.

17. The narrowing proposal for the third category of Plaintiff's request for non-email records seeks all records exchanged between the SCO and any Congressional office. OIP has identified approximately 8,000 files whose naming convention metadata contains the terms Congress*, Senat*, House, or Representative*, which generally refer to congressional entities and members of Congress. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 24,000 pages of records.

18. The narrowing proposal for the fourth category of Plaintiff's request for non-email records seeks all records exchanged between the SCO and the National Archives and Records Administration. OIP has identified nearly 184,000 files whose naming convention metadata contains the word "NARA," generally used to refer to the National Archives and Records Administration. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 552,000 pages of records.

19. The narrowing proposal for the fifth category of Plaintiff's request for non-email records seeks all records exchanged between the SCO and the White House. OIP has identified more than 3,000 files whose naming convention metadata contains the word "White House," "EOP," or "WHCO," generally used to refer to the White House, the Executive Office of the President, or the White House Counsel's Office. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 9,000 pages of records.

20. The narrowing proposal for the sixth category of Plaintiff's request for non-email records seeks all records exchanged between the SCO and the office of Special Counsel Robert Hur. To date, OIP has identified more than 2,500 files whose naming convention metadata contains the term "Hur" and two other related search terms which cannot be revealed at this time

on a publicly filed docket. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 7,500 pages of records.

21. The narrowing proposal for the seventh category of Plaintiff's request for non-email records seeks all records exchanged between the SCO and DOJ personal involved in the investigation regarding former Vice-President Mike Pence's retention of classified records. To date, OIP has identified more than 2,000 files whose naming convention metadata contains the word "Pence." OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 6,000 pages of records.

22. The narrowing proposal for the eighth category of Plaintiff's request for non-email records seeks all records exchanged between the SCO and Special Master Raymond Dearie. SCO records managers have informed OIP that a repository containing Special Master materials exists and contains 342 MB of data. OIP has been advised by the SCO records managers that this repository generally contains folders labeled docket entries, motions, special master appointment and review, stay application, and transcripts. While OIP cannot provide an exact number of pages, if OIP were to quantify this volume of data by a number of pages, OIP roughly estimates that 342 MB could represent 26,650 pages that OIP may have to individually review for responsiveness.

23. The narrowing proposal for the ninth category of Plaintiff's request for non-email records seeks all records provided to a federal court. To date, OIP has identified a distinct docket folder for the Election Investigation file, the Classified Documents investigation file, and the Special Master matter. These docket folders alone contain more than two GB of combined data. While OIP cannot provide an exact number of pages, if OIP were to quantify this volume of data by a number of pages, OIP roughly estimates that two GB could represent 150,000 pages

that OIP may need to review to identify potentially responsive records relevant to this category of Plaintiff's narrowing proposal.

24. The narrowing proposal for the tenth category of Plaintiff's request for non-email records seeks all deposition transcripts and recordings. To date, OIP has identified more than 1,500 files whose naming convention metadata contains the word "deposition." Additionally, OIP has identified to date more than 10,000 files whose naming convention metadata contains the word "transcript." OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 34,500 pages of records.

25. The narrowing proposal for the eleventh category of Plaintiff's request for non-email records seeks all witness statements. To date, OIP has identified more than 14,000 files whose naming convention metadata contains the words "Transcript" or "Interview" but do not contain the words "Audio," "Deposition," or "Hearing," which are terms reasonably likely to appear in file names that could be considered witness statements. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 42,000 pages of records, some of which may be duplicative of those identified for the tenth category of Plaintiff's request for non-email records.

### Plaintiff's Narrowing Proposal for Email Records

26. The narrowing proposal for categories one and two of Plaintiff's request for email records respectively seek unredacted volumes of the final report and all records explicitly cited in the final report. Although Plaintiff's Opposition appears to include these two categories in its narrowing footnote, these categories do not appear to pertain to email materials from SCO personnel. *See* Pl.'s Opp. at 1 n.2.

27. The narrowing proposal for the third category of Plaintiff's request for email

8

records seeks all records exchanged between the SCO and any Congressional office. OIP conducted an initial keyword search of SCO Smith personnel using email participant domain "@mail.house.gov" and keyword domain "senate.gov," and located nearly 6,000 items. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 18,000 pages of records.

28. The narrowing proposal for the fourth category of Plaintiff's request for email records seeks all records exchanged between the SCO and the National Archives and Records Administration. OIP conducted an initial keyword search of SCO Smith personnel using the keyword domain "nara.gov," and located nearly 2,000 items. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 6,000 pages of records.

29. The narrowing proposal for the fifth category of Plaintiff's request for email records seeks all records exchanged between the SCO and the White House. OIP conducted an initial keyword search of SCO Smith personnel using the email participant domain "@who.eop.gov," and located nearly 1,500 items. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 4,500 pages of records.

30. The narrowing proposal for the sixth category of Plaintiff's request for email records seeks all records exchanged between the SCO and the office of Special Counsel Robert Hur. OIP conducted an initial keyword search of SCO Smith personnel using the following keywords: "Robert Hur," "SCO-Hur," "SCO Hur," and "SCO-H," which represent abbreviations and short forms commonly used to refer to SCO Hur. OIP located nearly 7,000 items. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually

review for responsiveness roughly 21,000 pages of records.

31. The narrowing proposal for the seventh category of Plaintiff's request for email records seeks all records exchanged between the SCO and the DOJ personnel involved in the investigation regarding former Vice-President Mike Pence's retention of classified records. OIP conducted an initial keyword search of SCO Smith personnel using the following keywords: "Mike Pence," "Michael Pence," "Pence," "Robert Hur," "SCO-Hur," "SCO Hur," and "SCO-H," and located nearly 100,000 items. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 300,000 pages of records.

32. The narrowing proposal for the eighth category of Plaintiff's request for email records seeks all records exchanged between the SCO and Special Master Raymond Dearie. OIP conducted an initial keyword search of SCO Smith personnel using the following keywords: "Dearie" and "Special Master," and located nearly 25,000 items. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 75,000 pages of records.

33. The narrowing proposal for the ninth category of Plaintiff's request for email records seeks all records provided to a federal court. OIP conducted an initial keyword search of SCO Smith personnel using the keyword domain "uscourts.gov," the email domain used by federal courts. OIP located nearly 63,000 items. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 189,000 pages of records.

34. The narrowing proposal for the tenth category of Plaintiff's request for email records seeks all deposition transcripts and recordings. OIP conducted an initial keyword search

of SCO Smith personnel using the keyword "deposition," and located over 20,000 items. OIP estimates that this category of Plaintiff's narrowing proposal could require OIP to individually review for responsiveness roughly 60,000 pages of records.

35. The narrowing proposal for the eleventh category of Plaintiff's request for email records seeks all witness statements. Although Plaintiff's Opposition appears to include this narrowing category in its narrowing footnote, this category does not appear to pertain to email materials from SCO personnel. *See* Pl.'s Opp. at 1 n.2.

### Plaintiff's FOIA Request Remains Unreasonably Burdensome

36. As explained in my second declaration, even just a fraction of the SCO Smith records collection would be too burdensome for OIP to reasonably process. *See* 2d Brinkmann Decl. ¶ 24.

37. Regarding the proposed narrowing for non-email materials, OIP roughly estimates that the volume of records potentially responsive to Part (1) of Plaintiff's FOIA request for non-email materials could be more than three million pages.

38. Regarding the proposed narrowing for email records, OIP's roughly estimates that the volume of records potentially responsive to Part (2) of Plaintiff's FOIA request for email materials from SCO personnel could exceed 670,000 pages.

39. In my second declaration, OIP estimated that even if all of the IR Staff's Government Information Specialists and Attorneys worked full time to process records responsive to Plaintiff's FOIA requests for five years at an accelerated processing rate of 1,000 page per month per person (a processing rate that would strain OIP's resources at the expense of

the thousands of other FOIA requests OIP receives each year[1]) the entire IR staff would barely make a dent in the enormous volume of records sought by Plaintiff.  *See* 2d Brinkmann Decl. ¶ 25.  This statement therefore remains unchanged under Plaintiff's proposed narrowing.

40.     For the reasons stated above and in my first and second declarations, it is not reasonably possible for OIP to process Plaintiff's FOIA request as submitted to OIP or as currently narrowed by Plaintiff.  Moreover, it is worth noting that the records at issue are highly sensitive and will require extensive consultation with multiple Executive Branch entities.  Accordingly, processing the eleven broad categories of SCO records identified by Plaintiff would strain OIP's resources and the resources of other DOJ components and Executive Branch entities with which OIP would need to consult on any and all records containing their equities, consistent with DOJ FOIA regulations.  *See* 28 C.F.R. § 16.4(d).

I declare under penalty of perjury that the foregoing is true and correct.

_____
Vanessa R. Brinkmann

Executed this 22nd day of August 2025.

---

[1] In fiscal year 2024 the IR Staff received 3001 FOIA requests, and in fiscal year 2025 OIP projects that the IR Staff is currently on pace to receive over 6000 FOIA requests.