**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LEGAL EAGLE, LLC**, | |
| Plaintiff, | |
| v. | Case No. 24-cv-3316 (CRC) |
| **DEPARTMENT OF JUSTICE**, | |
| Defendant. | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

In November 2022, then-United States Attorney General Merrick Garland appointed Jack Smith as Special Counsel and tasked him with overseeing two ongoing criminal investigations into former President Donald Trump. Smith's work continued for roughly two years and resulted in several indictments. But after Trump was reelected in November 2024, it was reported that Smith would begin to wind down his criminal cases against the president-elect. A few days after the presidential election, Legal Eagle, LLC, which runs a popular law-related YouTube channel, submitted Freedom of Information Act ("FOIA") requests to two Department of Justice ("DOJ") components: the Office of Information and Policy ("OIP") and the Federal Bureau of Investigation ("FBI"). The requests sought various records and emails collected and maintained by the Special Counsel's Office ("SCO").

Legal Eagle's FOIA requests kicked off a year-long legal tussle with DOJ. After OIP constructively denied Legal Eagle's request for expedited processing, the company filed suit. And once OIP denied Legal Eagle's actual FOIA request, the complaint was amended to add substantive FOIA claims. DOJ has now filed a partial motion to dismiss or, alternatively, a

motion for partial summary judgment as to the request directed at OIP.[1]  The Court treats the motion as one for partial summary judgment and concludes that Legal Eagle has failed to exhaust its administrative remedies with respect to its substantive FOIA claim against OIP; as a result, that claim is not properly before the Court.  Further, Legal Eagle's claim based on OIP's constructive denial of its expedited processing request must be disposed of as moot.

## I.    Background

From 2022 to 2024, Special Counsel Jack Smith oversaw criminal investigations into former President Trump based on an alleged conspiracy to overturn the results of the 2020 presidential election and Trump's allegedly unlawful retention of classified documents at the Mar-a-Lago Club in Palm Beach, Florida.  Second Amended Complaint ("SAC") ¶¶ 6–21.  In the wake of Trump's reelection, "various media outlets reported that Smith would be 'winding down' both cases against former President Trump, issuing a report, and resigning, due to DOJ guidance that prohibits charging a sitting president with a crime."  Id. ¶ 19.  By late November 2024, Trump was dismissed as a defendant from the documents case, and the election case was dismissed altogether.  Id. ¶¶ 20–21.

Keenly interested in the SCO's findings, Legal Eagle filed a FOIA request with OIP on November 8, 2024.[2]  The broadly-framed request sought "two categories of records":

(1) All records collected[,] maintained, and stored by the SCO since November 18, 2022, during the Office's investigation into potential federal crimes committed by former President Donald Trump; and (2) All sent and received emails stored in the

---

[1] The government's dispositive motion does not address Legal Eagle's FOIA claim against the FBI, which is unaffected by this ruling.

[2] There is some dispute as to the date on which Legal Eagle's initial FOIA request was filed.  Compare SAC ¶ 27, with Second Mot. to Dismiss in Part or, Alternatively, for Summary Judgment in Part (ECF No. 17) at 1 n.1.  For the purposes of this motion, the government has agreed to use the November 8, 2024 date alleged by Legal Eagle in its complaint.  See id.  The Court will do the same.

email accounts of SCO personnel as of the date of the search, not including emails not directly relevant to the investigation (such as press clippings, DOJ administrative emails not unique to the SCO, etc.).

Id. ¶ 27.  The request clarified that "[t]he second category is not meant to limit the first category, but simply to provide more specifics regarding responsive emails."  Id. (alteration in original).  Legal Eagle also asked for its request to be processed expeditiously, given that "former President Trump ha[d] promised to fire Mr. Smith as soon as he [took] office again[.]"  Id. ¶ 43.  In Legal Eagle's view, it was "crucial that [the] information [collected by the SCO], which [would] now not be revealed in the normal course of criminal litigation, be released expeditiously" in order to "set the record straight" and "provide the public with insight into whether they can have confidence that former President Trump can satisfactorily execute the duties of his office."  Id. ¶¶ 33, 43.

On November 22, two weeks after Legal Eagle filed its FOIA request, the organization filed a complaint in this Court.  That original complaint included just one claim for relief as to OIP, alleging that the agency had constructively denied Legal Eagle's request for expedited processing of its FOIA request because it failed to respond within ten days.  See Complaint (ECF No. 1) ¶¶ 20–29.

On December 4, OIP responded to Legal Eagle's two-part request with a letter of decision, which explained that "the FOIA statute requires requests to be reasonably described to allow agency personnel to conduct an appropriate records search."  Second Mot. to Dismiss in Part or, Alternatively, for Summary Judgment in Part (ECF No. 17) ("Second Mot. to Dismiss"), Ex. C at 1.  According to the agency, Legal Eagle's records request was "so broadly sweeping and lacking specificity that, combined with the volume of records it encompasses, it [was] not reasonably described."  Id.  OIP's letter noted that if Legal Eagle "would like to reframe [its]

request to seek a specific topic of interest, a more tailored timeframe, or another reformulation," it should "contact th[e] Office." Id.  And if Legal Eagle was "not satisfied with th[e] Office's determination[,]" it could "administratively appeal" by writing to OIP's Director or submitting an appeal through the agency's online FOIA portal.  Id. at 2.

Rather than contacting OIP's FOIA office or lodging an administrative appeal, about a week after receiving OIP's determination, Legal Eagle amended its complaint in this case, adding a substantive FOIA claim alongside its expedited processing claim.  SAC ¶ 36.  Then, in mid-January 2025, Legal Eagle's counsel sent an email to the Assistant U.S. Attorney representing OIP in this litigation.  "In an attempt to resolve the matter of the OIP request without further briefing," the company's attorney wrote, Legal Eagle was "willing to limit the scope of the non-email portion of the OIP request to the following records[:]"

1. Unredacted volumes of the final report;
2. All records explicitly cited in the final report;
3. All records exchanged between the SCO and any Congressional office;
4. All records exchanged between the SCO and the National Archives and Records Administration;
5. All records exchanged between the SCO and the White House;
6. All records exchanged between the SCO and the office of Special Counsel Robert Hur;
7. All records exchanged between the SCO and DOJ personnel involved in the investigation regarding former Vice-President Mike Pence's retention of classified records;
8. All records exchanged between the SCO and Special Master Raymond Dearie;
9. All records provided to a federal court; and
10. All deposition transcripts and records; and
11. All witness statements.

Id. ¶ 37; see also Second Mot. to Dismiss, Ex. D at 5–6.  Legal Eagle's counsel concluded that the company was "also willing, as previously stated, to discuss limiting the scope of the email request," but would "need more information about the relevant employees to limit the scope of that request."  SAC ¶ 38; see also Second Mot. to Dismiss, Ex. D at 6.

The government's counsel responded by email, asserting that "the OIP request is not properly before the Court[,]" so "[c]onsequently, any narrowing of the request should occur through the administrative process, in which [Legal Eagle could] make a new, narrowed FOIA request and avail [it]self of OIP's FOIA Public Liaison for any questions about making that request." Second Mot. to Dismiss, Ex. D at 5. DOJ also filed a motion to dismiss the amended complaint on multiple bases, including that Legal Eagle did not administratively appeal the December 4 denial and thus failed to exhaust its administrative remedies. See generally First Mot. to Dismiss or, Alternatively, for Summary Judgment (ECF No. 9).

Instead of responding to the motion to dismiss, Legal Eagle moved to amend its complaint once more. See generally Mot. for Leave to File SAC (ECF No. 11). The Court granted that request and also struck the pending motion to dismiss. See Feb. 13, 2025 Min. Entry. In the wake of that conference and in an effort to move the litigation along, the government sent Legal Eagle a counterproposal responding to each of the eleven categories described in its narrowing proposal and notified Legal Eagle that it was still waiting for a proposal as to the second part of the OIP request, seeking emails. See Mot. for an Extension of Time (ECF No. 16) at 3. But in so doing, the government expressly preserved the argument the FOIA request was "not properly before the Court" and "not a valid FOIA request." Id. at 3 n.1.

The government's latest salvo comes in the form of a renewed partial motion to dismiss, or alternatively, for partial summary judgment. DOJ again contends that Legal Eagle failed to exhaust its administrative remedies before filing its FOIA claim, and that even if Legal Eagle did exhaust, both its original request and its more recent, partially-narrowed request are overbroad and unduly burdensome. See generally Second Mot. to Dismiss. In its opposition brief, Legal Eagle has agreed, in a footnote, to narrow the email half of its FOIA request to track the same

eleven categories enumerated above.  See Opp'n to Second Mot. to Dismiss (ECF No. 21) at 1
n.2.  The government's dispositive motion is now ripe for consideration.

## II.    Legal Standard

The motion now before the Court is a partial motion to dismiss, or alternatively, for
partial summary judgment.  As explained below, the Court will resolve the motion on exhaustion
grounds.  "Although FOIA cases 'typically and appropriately are decided on motions for
summary judgment,' where an agency argues that the requester has failed to exhaust his
administrative remedies," courts often "analyze the matter under Rule 12(b)(6) for failure to state
a claim."  Jean-Pierre v. Fed. Bureau of Prisons, 880 F. Supp. 2d 95, 100 n.4 (D.D.C. 2012)
(citation omitted).  Nevertheless, where "both parties rely on materials outside of the Complaint
to support their positions—i.e., declarations and exhibits[,]" the Court may appropriately analyze
the exhaustion question as a matter of summary judgment.  Kalu v. IRS, No. 14-cv-998 (JEB),
2015 WL 4077756, at *4 (D.D.C. July 1, 2015) (citing Vest v. Dep't of Air Force, 793 F. Supp.
2d 103, 112 (D.D.C. 2011), and Latham v. DOJ, 658 F. Supp. 2d 155, 158 (D.D.C. 2009)).

Here, some of the documents referred to in the parties' briefing (e.g., various pieces of
email correspondence) fall outside the usual array of materials that courts may consult at the
motion-to-dismiss stage.  Cf. Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)
(explaining that courts "may only consider the facts alleged in the complaint, documents attached
as exhibits or incorporated by reference in the complaint, and matters about which the Court may
take judicial notice" on a motion to dismiss).  The Court will therefore treat the pending
dispositive motion as one for partial summary judgment.

"The Court may grant a motion for summary judgment if the pleadings, depositions,
answers to interrogatories and admissions on file, together with affidavits or declarations, show

6

that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Vest, 793 F. Supp. 2d at 112 (citing Fed. R. Civ. P. 56(a)). "The court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are 'relatively detailed and non-conclusory,' and 'not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" White Coat Waste Project v. U.S. Dep't of Veterans Affs., 404 F. Supp. 3d 87, 95 (D.D.C. 2019) (citations omitted).

## III.  Analysis

The government posits that neither Legal Eagle's initial FOIA request, nor its subsequent, partially-narrowed request is properly before this Court because the company failed to exhaust its administrative remedies with OIP before filing suit. Having traced the somewhat serpentine procedural history of the case so far, and upon consideration of the relevant factors, the Court agrees with DOJ and therefore will not weigh the merits of the parties' overbreadth and burden arguments at this stage.

### A.  Legal Eagle has not administratively exhausted its FOIA request to OIP.

Before getting to the crux of the exhaustion dispute, the Court lays out a few familiar and fundamental premises of FOIA exhaustion doctrine—premises that the parties either expressly invoke or do not contest in their briefing.

*First*, FOIA's exhaustion requirement is a non-jurisdictional "prerequisite to seeking judicial relief[.]" DiBacco v. U.S. Army, 795 F.3d 178, 184 (D.C. Cir. 2015). "[A]s a jurisprudential doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." Hidalgo v. FBI, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003) (quoting Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 61 (D.C. Cir. 1990)). The core purpose of exhaustion is to ensure "that the agency has an

opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Oglesby, 920 F.2d at 61. And FOIA's administrative scheme "favors treating failure to exhaust as a bar to judicial review." Hidalgo, 344 F.3d at 1259.

Second, "a plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request—and thus properly seek judicial review regarding that request—and yet not have exhausted her remedies with respect to another aspect of a FOIA request." Shapiro v. DOJ, 153 F. Supp. 3d 253, 283 (D.D.C. 2016) (quoting Dettmann v. DOJ, 802 F.2d 1472, 1477 (D.C. Cir. 1986)); see also Pinson v. DOJ, 202 F. Supp. 3d 86, 98 (D.D.C. 2016). In short, exhaustion as to one FOIA claim is not necessarily exhaustion as to all related FOIA claims.

Third, a FOIA plaintiff may not cure a failure to exhaust by narrowing its request during litigation. See Opp'n to Second Mot. to Dismiss at 2–3 ("Legal Eagle agrees that if a plaintiff has not exhausted administrative remedies, it generally cannot save a request by narrowing it during litigation."). At the same time, assuming that a plaintiff's *initial* FOIA request is properly before the Court, he "may, at least prior to summary judgment, unilaterally narrow his own FOIA request" during the course of litigation. Zorn v. DOJ, No. 24-cv-3360 (CRC), 2025 WL 35929, at *4 (D.D.C. Jan. 6, 2025); see also Am. Ctr. for L. & Just. v. DOJ, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) ("FOIA's text contemplates that plaintiffs will narrow the scope of their requests. Thus, when a plaintiff narrows his FOIA request in a joint status report, it supersedes any broader request set forth in the plaintiff's complaint." (citation omitted)); People for the Am. Way Found. v. DOJ, 451 F. Supp. 2d 6, 12 (D.D.C. 2006) ("FOIA requests are frequently clarified or modified even after a lawsuit is filed. To deny that possibility might be to deny any prospect of compromise or settlement in FOIA cases.").

So where is the hang-up?  According to Legal Eagle, FOIA's general exhaustion requirement has "no bearing on this case, for one simple reason: administrative appeals are not required for determinations that requests are not proper."  Opp'n to Second Mot. to Dismiss at 3. In other words, the organization was not obligated to exhaust the administrative appeal process because OIP determined that its request was overly broad and did not "reasonably describe" the records it sought.

As the Court will make clear with some additional table-setting, Legal Eagle's argument fails to take flight.  To start, consider the threshold statutory requirements for a proper FOIA request:  The request must (i) "reasonably describe[]" the desired records, and (ii) be "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed."  5 U.S.C. § 552(a)(3)(A).  "A request reasonably describes records if 'the agency is able to determine precisely what records are being requested.'"  Evans v. Fed. Bureau of Prisons, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting Kowalczyk v. DOJ, 73 F.3d 386, 388 (D.C. Cir. 1996)).  More specifically, a reasonably-described request "enable[s] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort."  Shapiro v. CIA, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) (Cooper, J.) (quoting Dale v. IRS, 238 F. Supp. 2d 99, 104 (D.D.C. 2002)).[3]

An agency has no obligation to process an improper FOIA request, including one that does not reasonably describe the requested records.  See, e.g., Evans, 951 F.3d at 583; Truitt v. Dep't of State, 897 F.2d 540, 544 (D.C. Cir. 1990) ("[A] request which fails to 'reasonably

---

[3] There is a subtle—yet important—difference between a FOIA request that is not "reasonably described" and one that it is overly burdensome to process.  To the extent the briefing conflates the two, see generally Second Mot. to Dismiss at 12–17, the Court directs the parties to its discussion of this nuance in Shapiro, 170 F. Supp. 3d at 154–56.

describe []' the documents sought does not trigger a search of agency records." (second alteration in original)).  The submission of an improper FOIA request does not, however, absolve the requester of his general duty to exhaust administrative remedies.  As numerous courts in this District have held, the "failure to comply with FOIA and agency requirements—by, for example, failing to reasonably describe the records—'amounts to a failure to exhaust administrative remedies, which warrants dismissal.'"  Frost Brown Todd LLC v. CMS, No. 21-cv-2784, 2024 WL 450056 (D.D.C. Feb. 5, 2024) (quoting Dale, 238 F. Supp. 2d at 102–03); see also Landmark Legal Found. v. DOJ, 211 F. Supp. 3d 311, 317–321 (D.D.C. 2016); Reedom v. SSA, 192 F. Supp. 3d 116, 121–22 (D.D.C. 2016); Pinson v. DOJ, 70 F. Supp. 3d 111, 118 (D.D.C. 2014); Freedom Watch, Inc. v. Dep't of State, 925 F. Supp. 2d 55, 60–63 (D.D.C. 2013); Latham, 658 F. Supp. 2d at 161–62; MacLeod v. DHS, No. 15-cv-1792 (KBJ), 2017 WL 4220398, at *12–13 (D.D.C. Sep. 21, 2017).[4]  Moreover, if the agency offers the requester a chance to perfect a deficient request, and he fails to do so, he may also have failed to exhaust. See, e.g., Dale, 238 F. Supp 2d at 103.

Here, OIP offered Legal Eagle the chance to appeal the agency's determination that its request was not reasonably described; alternatively, the agency invited Legal Eagle to "reframe [its] request to seek a specific topic of interest" by "contact[ing] th[e] Office."  Second Mot. to

---

[4] To be sure, "[w]hether or not [an agency's] interpretation of the term 'reasonably describes' in the FOIA is inconsistent with the FOIA is a purely legal question of statutory interpretation" that courts ultimately "review de novo."  Nat'l Sec. Counselors v. CIA, 898 F. Supp. 2d 233, 274 (D.D.C. 2012).  Furthermore, a requester's failure to comply with FOIA regulations that effectively infringe on his "substantive right to records" does not amount to a failure to exhaust. See Elec. Priv. Info. Ctr. v. IRS, 910 F.3d 1232, 1238–39 (D.C. Cir. 2018) (holding that a FOIA plaintiff did not fail to exhaust where the application of an agency's FOIA regulations "disregard[ed] the plain statutory text" of FOIA and "force[d]" the plaintiff to establish that the records it sought were not exempt from disclosure); see also Pretzman v. Mayorkas, No. 23-cv-2577 (TJK), 2024 WL 3887384, at *4 n.5 (D.D.C. Aug. 20, 2024).

Dismiss, Ex. C at 1. Like the requester in <u>Freedom Watch, Inc. v. FBI</u>, Legal Eagle was "[a]pparently unhappy with" the two "options" OIP offered and "instead brought its grievance to this Court, challenging [OIP's] denial of an unperfected request that [it] did not administratively appeal" by amending its original complaint. No. 18-1912 (JEB), 2019 WL 108879, at *3 (D.D.C. Jan. 4, 2019). Legal Eagle has since narrowed the scope of its FOIA request in this judicial forum—but it never submitted a refined request directly to OIP, as the agency instructed in its December 4 letter.[5]

Thus, Legal Eagle's original FOIA request to OIP was not appropriately exhausted.[6] Although the organization may, "at least prior to summary judgment, unilaterally narrow [its] own FOIA request," <u>Zorn</u>, 2025 WL 35929, at *4, such unilateral narrowing cannot cure its *threshold* failure to exhaust its original FOIA claim. Nor can Legal Eagle correct this procedural

---

[5] Although the operative complaint alleges that Legal Eagle "accepted OIP's offer" to reformulate its FOIA request by emailing DOJ's counsel of record in this case with a narrowing proposal, <u>see</u> SAC ¶ 37, the record belies that characterization. After receiving OIP's December 4 letter and "[p]rior to filing its Amended Complaint on December 10[,]" Legal Eagle "did not reframe or narrow the request" or "contact OIP's FOIA Public Liaison about potential narrowing[.]" Def.'s Statement of Undisputed Material Facts ¶ 5; <u>see also</u> Opp'n to Second Mot. to Dismiss at 1 n.1 ("admit[ing] the entirety of Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment in Part[,]" save paragraph 12). Legal Eagle's narrowing proposal came more than a month after it received the agency's December 4 letter, and was directed at DOJ counsel during ongoing negotiations in this lawsuit; it therefore cannot be reasonably interpreted as a response to OIP's earlier offer.

[6] In reaching this conclusion, the Court finds it unnecessary to evaluate whether the initial request was, in fact, reasonably described, although both this and other courts in the District have occasionally weighed that question in deciding exhaustion challenges to purportedly imprecise FOIA requests. <u>See, e.g.</u>, <u>Shapiro</u>, 170 F. Supp. 3d at 154–56; <u>Freedom Watch</u>, 925 F. Supp. 2d at 60–63; <u>Frost Brown Todd</u>, 2024 WL 450056, at *3–4. Such an analytical approach might have been fitting if it could hasten a final resolution. But opining on the precision of a now-inoperative FOIA request serves no clear purpose at this juncture. As explained below, the Court will leave it to Legal Eagle to move the ball forward and let OIP "exercise" its "expertise on the matter" and "make a factual record to support its decision." <u>See</u> <u>Oglesby</u>, 920 F.2d at 61. The Court may review the merits of that decision in due course, should the parties fail to reach a compromise in the administrative forum, but it declines to do so now.

defect by pointing to its constructively-exhausted expedited processing claim, as the claims are distinct and must independently satisfy the prerequisites to judicial review. Cf. Shapiro, 153 F. Supp. 3d at 283; Pinson, 202 F. Supp. 3d at 98. If either such cure were available, a FOIA plaintiff could short-circuit the administrative appeals process by tacking new claims onto a preexisting complaint and then negotiating the scope of their request(s) in court in the first instance. Such a result would undermine the core purpose of exhaustion, which is to give government agencies a first bite at the FOIA apple.

In attempting to circumvent this conclusion, Legal Eagle flies wide of the mark. The organization asserts that an agency's determination that a FOIA request fails to reasonably describe the sought-after records is not an "adverse determination" requiring exhaustion of the agency appeals process. Opp'n to Second Mot. to Dismiss at 3. This assertion has a kernel of truth. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), an agency response triggers FOIA's exhaustion requirement where it includes the agency's "determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." Oglesby, 920 F.2d at 65. But, as the D.C. Circuit has more recently observed, an "agency's threshold decision that a proper request has been filed is obviously *not* the agency's 'determination' whether to comply" with the request under 5 U.S.C. § 552(a)(6)(A)(i). Citizens for Resp. & Ethics in Wash. v. FEC ("CREW v. FEC"), 711 F.3d 180, 185 n.3 (D.C. Cir. 2013) (Kavanaugh, J.) (emphasis added).

Legal Eagle is thus correct to say that an agency's initial decision as to the propriety of a FOIA request under 5 U.S.C. § 552(a)(3)(A) is not quite an "adverse determination" in the Oglesby sense. But it offers no real support for the second part of its assertion—*i.e.*, its

categorical statement that administrative "appeals are *only* required for adverse determinations." Opp'n to Second Mot. to Dismiss at 3 (emphasis added).

In support of its position, Legal Eagle leans heavily on Nat'l Sec. Counselors v. CIA, one of just two judicial opinions the company cites in the exhaustion section of its opposition brief. 898 F. Supp. 2d 233 (D.D.C. 2012). There, a plaintiff challenged the CIA's alleged policy or practice of refusing a FOIA requester's right to administratively appeal the agency's refusal to process a request that it has deemed improper. Because an agency has no duty to process an improper FOIA request, the court held that "FOIA does not require agencies to provide administrative appeals on the issue of whether a request is proper in the first place." Id. at 280. However, the court continued, "the unavailability of an administrative appeal would not preclude a requester from seeking *judicial* review of an agency's decision that a request is improper." Id. Framed another way, "when an agency makes a conscious choice not to provide a party with administrative process[,]" the agency constructively waives the requirement of administrative exhaustion[,]" and the FOIA requester is entitled to immediate judicial review. Id. at 280. This result is entirely fitting, as a "party appearing before an administrative body cannot be punished for the agency's choice to shoot itself in the foot by refusing to review its own decisions." Id. at 281.

The logic of Nat'l Sec. Counselors is inapposite here. OIP did not make a "conscious choice not to provide a party with administrative process[,]" and thus "shoot itself in the foot by refusing to review its own decision[]." Id. at 280–81. To the contrary, OIP elected to offer Legal Eagle the option of administrative appeal—an option the organization rebuffed. And it also offered Legal Eagle a chance to perfect its request in the administrative forum, an opportunity Legal Eagle likewise declined. Although Oglesby may not directly control, as it

speaks to exhaustion of an "adverse determination" under 5 U.S.C. § 552(a)(6) rather than § 552(a)(3)(A), it remains persuasive.  Where, as here, an agency has proffered an administrative appeal process or the opportunity for a redo, "[a]llowing a FOIA requester to proceed immediately to court" prematurely "cut[s] off the agency's power to correct or rethink initial misjudgments or errors."  920 F.2d at 64.

On a final note, Legal Eagle insists that its position is "supported by analogy to another type of determination which does not require an administrative appeal": a denial of an expedited processing request.  Opp'n to Second Mot. to Dismiss at 3.  It is true, as Legal Eagle explains, that a FOIA requester may seek judicial review of an agency's denial of his expedited processing request without first exhausting any administrative process that an agency may offer.  See, e.g., Citizens for Resp. & Ethics in Wash. v. DOJ ("CREW v. DOJ"), 436 F. Supp. 3d 354, 359 (D.D.C. 2020).  But this exception to FOIA's exhaustion requirement is based on the particular language of 5 U.S.C. § 552(a)(6)(E)(iii), a provision of the FOIA statute which "subject[s] to judicial review" any "[a]gency action to deny or affirm denial of a request for expedited processing."  Courts in this District "have interpreted that language to relieve plaintiffs of the exhaustion requirement when appealing a denial of expedited processing."  Id. at 359 (collecting cases).  And that consensus view makes good sense.  "To require a requestor who has been denied expedited processing to exhaust administrative remedies before seeking judicial review would defeat the . . . aim of accelerating response time."  Id.

Because the expedited processing exception to administrative exhaustion is *sui generis*, it is not a fitting analogue here.  Legal Eagle is therefore mistaken in asserting that "[i]f the mere offer of an administrative appeal made such an appeal mandatory, CREW v. DOJ "could not

have been decided as it was, nor could any of the cases it cited for this holding."  Opp'n to

Second Mot. to Dismiss at 4.

Despite a few minor complications, the bottom line here is simple.  Legal Eagle did not

administratively appeal OIP's determination that its original FOIA request was not reasonably

described.  Nor did the company resubmit a refined request directly to the agency.  "No matter

how it is sliced," the original OIP FOIA claim was not properly before the Court.  Freedom

Watch, 2019 WL 108879, at *3.  And subsequent narrowing of the FOIA request does not cure

this procedural defect.  The Court is therefore inclined to grant partial summary judgment to the

government and dispose of Legal Eagle's substantive FOIA claim for failure to exhaust.

B.  Jurisprudential considerations support summary judgment on FOIA claim.

Notwithstanding the above conclusion, FOIA's exhaustion requirement is prudential,

rather than jurisdictional, in nature.  See, e.g., Pinson, 70 F. Supp. 3d at 118.  "A court may

waive the exhaustion requirement if doing so will not 'undermin[e] the purposes and policies

underlying the exhaustion requirement, namely, to prevent premature interference with agency

processes, to give the parties and the courts [the] benefit of the agency's experience and

expertise[,] and to compile an adequate record for review.'"  Id. (alterations in original) (quoting

Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004)).

The Court recognizes that the parties have been negotiating the scope of the FOIA

request to OIP during the pendency of this action and is generally loath to undermine "advances

made" during the course of litigation.  People for the Am. Way Found., 451 F. Supp. 2d at 11–

12.  However, Legal Eagle's FOIA request has been a moving target; the company has even tried

to narrow the request further in a footnote in its opposition brief.[7]  Although OIP has taken a position on the propriety of Legal Eagle's partially-narrowed request in its motion-to-dismiss briefing, see generally Reply in Supp. of Second Mot. to Dismiss at 4–6, the agency has not had a fulsome "opportunity to exercise its discretion and expertise on the matter" in the administrative forum, despite offering Legal Eagle two avenues for further engagement.  Wilbur, 355 F.3d at 677 (citation omitted).  For this reason, the agency has taken pains to preserve its exhaustion argument, even while it has participated in Court-directed negotiations over the scope of the request.  See Mot. for an Extension of Time (ECF No. 16) at 3 n.1.

     Nor would sending Legal Eagle back to OIP for further direct negotiation with the agency be futile, duplicative, or inefficient.  See, e.g., Ayuda, Inc. v. FTC, 70 F. Supp. 3d 247, 262–63 (D.D.C. 2014) (declining to dismiss FOIA claim for failure to exhaust because of the "futility and inefficiency of requiring Plaintiffs to restart . . . from the beginning").  Both sides have demonstrated their willingness to arrive at a properly-scoped FOIA request.  The narrowing process will presumably continue in the administrative forum, with the benefit of the information the agency revealed in the Second and Third Brinkmann Declarations.[8]  Should the agency refuse to process Legal Eagle's narrowed request even after the opportunity to apply its expertise and "correct or rethink" any "initial misjudgments or errors" through the internal appeals process, Oglesby, 920 F.2d at 64, Legal Eagle is free to amend its complaint in this case with a

_____

[7] The Court will not consider Legal Eagle's latest concession.  Cf. Gun Owners of Am., Inc. v. FBI, 594 F. Supp. 3d 37, 45 (D.D.C. 2022) ("A brief cannot amend a FOIA request[.]").

[8] For instance, according to the agency's own submissions, at least some of the eleven sub-components of the non-email portion of Legal Eagle's FOIA request turned up only a few thousand records.  See, e.g., Declaration of Vanessa R. Brinkmann (ECF No. 23-1) ¶¶ 19–21. Without opining on the merits of the agency's overbreadth challenge, the Court notes that the government's argument as to burdensomeness seems to carry less weight with respect to those sub-components, at least.

refreshed FOIA claim against OIP.  By that point, the precise contours of Legal Eagle's challenge will have been "crystallize[d]," with an "ample record," thereby facilitating judicial review.  Nat'l Sec. Counselors v. CIA, 931 F. Supp. 2d 77, 100 (D.D.C. 2013).

In closing, the Court acknowledges that its ruling reflects a rather strict application of FOIA's administrative exhaustion doctrine.  In certain situations, such a formalistic approach might be unwarranted.  See, e.g., Pinson, 70 F. Supp. 3d at 118 (applying the exhaustion doctrine more flexibly, in light of case-specific circumstances); Ayuda, 70 F. Supp. 3d at 262–63 (same).  The exhaustion requirement is not, however, a "mere formalit[y] to be routinely ignored, some unseemly morass of bureaucratic red tape," Cable News Network, Inc. v. FBI, 271 F. Supp. 3d 108, 112 (D.D.C. 2017)—especially where, as here, the requester is represented by sophisticated attorneys who are repeat players in the FOIA space.  Rather, this prerequisite is a "core component of orderly procedure and good administration."  Id. (citation and internal quotation marks omitted).  Prudential considerations bolster the Court's decision to grant summary judgment, as the "orderly procedure" of the internal appeals process will either obviate or refine the parties' dispute as to the precision and scope of the FOIA request.

    C.  The expedited processing claim is dismissed as moot.

The government also seeks dismissal of Legal Eagle's expedited processing claim as moot.  See Second Mot. to Dismiss at 7, 18.  Legal Eagle's opposition brief does not address this issue, so the government's point is conceded.  The Court agrees with DOJ in any case.

According to the FOIA statute, "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request."  5 U.S.C. § 552(a)(6)(E)(iv).  Said differently, an expedited processing claim is only live "when an agency has not yet provided a

final substantive response to the individual's request for records." <u>Muttitt v. Dep't of State</u>, 926 F. Supp. 2d 284, 296 (D.D.C. 2013).  As a statutory and practical matter, then, such a claim becomes moot "once the agency has completed its processing of records," as "[t]here is nothing more to expedite[.]" <u>Power the Future v. U.S. Dep't of State</u>, No. 24-cv-346 (RC), 2025 WL 343175, at *4 (D.D.C. Jan. 30, 2025).  Even if the FOIA plaintiff has or intends on challenging the substance of the agency's determination, "the *timeliness* of that determination is no longer a live controversy fit for judicial review" once the agency's decision has issued.  <u>Muttitt</u>, 926 F. Supp. 2d at 296; <u>see also</u> <u>Power the Future</u>, 2025 WL 343175, at *4 (explaining that the "completeness" of the government's response for § 552(a)(6)(E)(iv) purposes should not be conflated with the adequacy of its response); <u>cf.</u> <u>Sabra v. CBP</u>, No. 20-cv-681 (CKK), 2021 WL 796166, at *5 (D.D.C. Mar. 2, 2021).

   At the risk of repetition, the state of play here is that OIP has denied Legal Eagle's FOIA request as improper, and the Court will not entertain a challenge to that particular decision until Legal Eagle has actually or constructively exhausted the administrative appeals process.  Whatever Legal Eagle's position on the substance of OIP's determination, the agency has, from its perspective, provided a complete response to the organization's initial request.  Legal Eagle may very well ask the agency to process a reformulated request on an accelerated timeline.  But as to the original, unexhausted request, there is "nothing more to expedite[.]" <u>Power the Future</u>, 2025 WL 343175, at *4.  Legal Eagle's expedited processing claim is therefore moot.

## IV.  Conclusion & Order

   For the foregoing reasons, it is hereby

   **ORDERED** that Defendant's Motion to Dismiss in Part, or, Alternatively, for Summary Judgment in Part, ECF No. 17, is GRANTED.  It is further

**ORDERED** that summary judgment as to the first and second counts of this action is GRANTED in favor of Defendant.  It is further

**ORDERED** that the parties shall file a status update as to the remaining claim in this case within two weeks of the date of this Memorandum Opinion and Order.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  January 6, 2026